

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:10cr388 |
| ) | |
| OSAMA ESAM SALEEM AYESH, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Defendant, a foreign national employed by the Department of State and assigned to the United States Embassy in Baghdad, Iraq, was tried before a jury on two counts of conversion of government funds and one count of felony conflict of interest. Near the conclusion of the six day trial, and after the government had presented its closing argument, the defendant rose suddenly and unexpectedly and made a statement before the jury in which, *inter alia*, he requested to discharge his court-appointed counsel and to proceed *pro se* in presenting his own closing argument. The request was denied in a Bench ruling, and this Memorandum Opinion elucidates the reasons for that ruling.

### I.

The facts pertinent to the issues addressed here may be succinctly stated.[1] Defendant, Osama Esam Saleem Ayesh, a citizen and primary resident of Jordan, was employed by the Department of State and assigned to the United States Embassy in Baghdad, Iraq ("USEB") as a shipping and customs supervisor when, during the period 2008-2010, he allegedly abused his USEB position to convert $243,416 in United States funds. The three count indictment charged

---

[1] For a more complete recitation of the facts, *see United States v. Ayesh*, No. 1:10cr388 (E.D. Va. Jan. 28, 2011) (holding, *inter alia*, that the exercise of extraterritorial jurisdiction over defendant and his conduct is proper under 18 U.S.C. §§ 208(a) and 641).

1

defendant with two counts of theft and conversion of government funds, in violation of 18 U.S.C. § 641, and one count of participating in government contracts despite a conflict of interest, in violation of 18 U.S.C. § 208(a). The government alleged and presented substantial evidence at trial to prove that defendant arranged to have United States government funds intended as payment for contractors to be wired to his wife's account in Amman, Jordan.

At the arraignment, defendant, represented by a public defender, pled not guilty and demanded a jury trial. Not long thereafter, defendant filed a motion to substitute counsel, which was granted, and a very experienced member of the local criminal defense bar was appointed to represent him. See *United States v. Ayesh*, No. 1:10cr388 (E.D. Va. Dec. 17, 2010) (Order) (granting defendant's motion for substitute counsel). Three weeks later, on January 6, 2011, at the hearing on defendant's various pretrial motions, defendant expressed a desire to proceed *pro se*. Accordingly, a thorough *voir dire* was conducted to ensure that defendant understood his right to self-representation and the consequences of deciding to exercise that right.[2] In the course of the *voir dire*, defendant was advised that he had a constitutional right to have counsel appointed to represent him, and that he also had a constitutional right to self-representation. Defendant was further advised that these rights were mutually exclusive. Specifically, defendant was advised that if he proceeded with appointed counsel, his counsel would make all filings on defendant's behalf, make all arguments at trial, and otherwise represent the defendant throughout pretrial and trial proceedings. If, on the other hand, defendant chose to proceed *pro se*, defendant would be required to conduct the case himself in all respects, and that he would be subject to all the rules of court that apply to attorneys. Defendant was also advised that if he proceeded *pro se*,

---

[2] *See* Mot. Hrg. Tr., Jan. 6, 2011; *see also Faretta v. California*, 422 U.S. 806, 834 (1975) (requiring courts to conduct a *voir dire* of defendant to ensure that his decision to exercise his right to self-representation is knowing and voluntary); *United States v. Singleton*, 107 F.3d 1091, 1095 (4th Cir. 1997) (same); *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005) (same).

his appointed counsel would be permitted to assist defendant as standby counsel, whose duties would be limited to advising defendant, and standby counsel would not be allowed to examine witnesses or to make arguments.[3] In other words, defendant was told he would not be permitted a hybrid form of representation whereby he acted on his own behalf in some respects and appointed counsel acted on his behalf in other respects. And finally, defendant was advised that once he made the decision whether to proceed *pro se* or with appointed counsel, that decision would be final. Two recesses were called to allow defendant to confer with his counsel to consider whether he wished to exercise his right to self-representation. At the conclusion of the second recess, defendant, under oath, unequivocally, knowingly, and intelligently waived his right to self-representation, and affirmed that he wished to proceed with appointed counsel acting on his behalf. In accord with defendant's election, appointed counsel continued to represent defendant through pretrial matters and at the trial itself.

Defendant's jury trial spanned six days. In the course of the trial, the government presented twenty-six witnesses and over one hundred exhibits in its case in chief. Following the government's case in chief, the government rested and defendant, by counsel, stated that no evidence or witnesses would be presented on defendant's behalf. Because it appeared that defendant did not wish to testify on his own behalf, a *voir dire* of defendant was then conducted to ensure that defendant was making a knowing and intelligent waiver of his right to testify.[4] Defendant, a thirty-six year old college graduate fluent in English, was advised (i) that he had the right to testify on his own behalf; (ii) that if he testified, he would be subject to cross

---

[3] Defendant was advised that if he testified at trial, standby counsel might well be permitted to conduct the examination to avoid a narrative, but that this exception, if granted, would be the only exception to the prohibition on standby counsel's trial participation.

[4] *See* Trial Tr. Feb. 1, 2011.

3

examination by the government; (iii) that he also had a right to remain silent; and (iv) that if he elected not to testify, and chose instead to remain silent, the jury would be instructed that they could draw no inference from the defendant's silence and indeed could not even discuss in the course of deliberation that defendant had not testified. Defendant then requested, and was provided, a reasonable recess for the purpose of discussing with counsel whether to testify. At the conclusion of the recess, he affirmed under oath that he did not wish to testify. Accordingly, the trial proceeded directly to closing arguments the next morning.

Following the government's closing argument, but before defense counsel began the closing argument on behalf of the defendant, defendant, suddenly and unexpectedly, rose to his feet in the presence of the jury and made several statements:

> THE DEFENDANT: Your Honor, I move -- I move motion to strike for insufficient evidence, the value of the contract. That is not my wife. They did not provide any evidence that Eqbal Yousef is my wife.
>
> THE COURT: All right. You may be seated.
>
> THE DEFENDANT: Thank you.
>
> THE COURT: No more outbursts.
>
> (To jury) You are instructed to disregard that.
>
> . . .
>
> THE DEFENDANT: Your Honor . . . I would like . . . to proceed *pro se*.
>
> . . .
>
> THE COURT: Be seated.
>
> . . .
>
> THE DEFENDANT: Just put that it was – my objection was denied, my Constitutional rights to proceed pro se. This is my constitutional right.
>
> . . .

4

> THE DEFENDANT: Your Honor, I have evidence -- I have evidence for my -- for my --
>
> [Inaudible comments from defense counsel to defendant.]
>
> THE COURT: You will have to remain silent.[5]

Defendant's outburst focused chiefly on his assertion that Eqbal Yousef, the owner of the account to which defendant induced the government to wire the government funds in issue, was not his wife. The government had adduced substantial evidence at trial that Yousef was defendant's wife, including defendant's knowing and voluntary admission following a waiver of his *Miranda* rights that Yousef was his wife, and Department of State records also reflecting that Yousef was his wife. Yet, in his outburst at trial, defendant claimed Yousef was not his wife. And although defendant did not testify or present any witnesses or evidence through counsel in his case in chief at trial, he asserted that he had "evidence" to present, presumably in his closing argument. *Id.*

The jury was instructed to disregard defendant's outburst in its entirety, and then the parties presented argument out of the jury's presence on defendant's request to proceed *pro se* and to present his own closing argument. The government objected to defendant's request, noting that defendant might well seek to offer testimony during closing argument without being subject to cross examination, despite having earlier waived his right to testify. A Bench ruling then issued denying defendant's request to present closing argument on his own behalf inasmuch as he had previously made a knowing and voluntary decision to proceed with appointed counsel and could not, at this late date, reverse that decision for the purpose of offering a closing argument. He was, however, given time to consult with his attorney to discuss what arguments he wished his counsel to raise in closing argument. Although defendant was advised that he was

---

[5] See Trial Tr. Feb. 2, 2011.

required to address the Court through counsel rather than directly, defendant stated that he wanted an opportunity to explain his actions, even if he were to be found guilty, so that his colleagues at the Department of State would not be upset with him. *Id.*

Defendant and counsel were allowed to confer for a period of time concerning the content of the closing argument on behalf of defendant. After a few minutes of conferring, defendant asserted that counsel had refused to include in his closing argument all of the material that defendant wished, and therefore defendant requested to dismiss counsel. This request was denied, and defendant was advised that his counsel was "not required to make representations or arguments that, in his view, are not warranted by the evidence or the law," and that further arguments concerning counsels' representation could be made on post-conviction challenges, if necessary. *Id.* The trial then proceeded with defendant's counsel presenting closing argument without further outbursts from defendant. After the government's rebuttal argument and jury instructions, the jury retired to deliberate. Approximately one hour later, the jury returned a verdict convicting defendant on all counts.

## II.

Prior to 1975, there was a lack of clarity concerning the right of a defendant in a criminal case to self-representation. Then, in 1975, the Supreme Court provided the needed clarity in this regard in *Faretta v. California*, 422 U.S. 806 (1975), which held that a defendant in a criminal case has a constitutional right to self-representation. *Id.* at 834. Importantly, the Supreme Court also suggested that this right to self-representation was not absolute, *see id.* at 834, and courts following *Faretta* have elucidated this point. Especially instructive in this regard is the Fourth Circuit's decision in *United States v. Bush*, 404 F.3d 263 (4th Cir. 2005), where the court held that the district court did not err in denying defendant's request to proceed *pro se* after finding defendant intended to manipulate the trial process. *Id.* at 271. In reaching this result, the Fourth

Circuit noted that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* (internal quotations omitted). Thus, it is now well settled that once a defendant knowingly and voluntarily waives his right to self-representation, attempts thereafter to proceed *pro se* are committed to the sound discretion of the trial judge. *United States v. Webster*, 84 F.3d 1056, 1062 & 1063 n.3 (8th Cir. 1996) (defendant must clearly and unequivocally assert desire to waive counsel and proceed pro se; right to self-representation is unqualified only if demanded before trial, and thereafter is subject to trial court's discretion). Additionally, it is well settled that a defendant's right to be represented by counsel is mutually exclusive of his right to proceed *pro se*, such that, although defendant may be assisted by standby counsel at the discretion of the trial court, a defendant who chooses to be represented by counsel is generally not also permitted to act *pro se* by filing pleadings, examining witnesses, or delivering the closing argument.[6]

These principles, applied to this case, point convincingly to the conclusion that the discretionary decision to deny defendant's request to present his own closing argument was sound and appropriate under the circumstances. Thus, the record clearly reflects that defendant knowingly and voluntarily waived his right to self-representation, and his later attempt to seek self-representation could be granted only on a discretionary basis. Although this discretion affords a trial court the option of allowing a defendant hybrid representation, whereby a defendant proceeds *pro se* in some respects and acts through counsel in others, *see Singleton*, 107 F.3d at 1099, the problems with hybrid representation are not difficult to imagine. In

---

[6] *See Bush*, 404 F.3d at 270; *Webster*, 84 F.3d 1056, 1062 & 1063 n.3; *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001); *see also United States v. Barefoot*, 2010 U.S. Dist. LEXIS 111311 (E.D.N.C. Oct. 3, 2010) (refusing to consider *pro se* motions by a criminal defendant represented by counsel, regardless of defendant's competency); *United States v. Shrader*, 2010 U.S. Dist. LEXIS 65806 (S.D.W. Va. July 1, 2010) (refusing to consider *pro se* motions of a represented defendant).

particular, one can easily imagine a scenario where, as here, a defendant is represented by counsel for all aspects of trial prior to closing argument, chooses not to testify at the trial, and then attempts to give the closing argument *pro se*. Under these circumstances, the defendant may impair the trial process by making assertions in closing argument that amount to testifying without being subject to cross examination. *See, e.g., United States v. La Chance*, 817 F.2d 1491, 1497 (11th Cir. Fla. 1987) (discussing a trial court's attempts to rein in a *pro se* defendant who attempted to use closing argument to testify without being subject cross examination); *Loomis v. Blades*, 2008 U.S. Dist. LEXIS 11780 (D. Idaho Feb. 15, 2008) (same).

In the circumstances of this case, the discretionary denial of defendant's request to present his own closing argument was clearly warranted given the substantial potential that this request had for adversely affecting the integrity and efficiency of the trial. Despite having waived pretrial his right to self-representation, and despite having waived his right to testify in his own behalf, defendant nonetheless sought to make factual assertions in the presence of the jury that amounted to testifying without being subject to cross examination. Moreover, defendant, an intelligent and well-educated individual who filed numerous *pro se* pretrial motions, was well aware that he had been instructed not to address the jury, and he nonetheless defied this instruction. Accordingly, it was clear from defendant's trial conduct that allowing defendant to present his closing argument *pro se*, but instructing defendant to base his argument only on the trial record, would have been an exercise in futility. In sum, defendant had been competently represented by counsel throughout the trial, and granting defendant's request to present a *pro se* closing argument would have resulted in substantial prejudice and confusion and thereby significantly impaired the trial process. Under the circumstances, therefore, his request to present his own closing argument was appropriately denied.

## III.

A second matter merits mention. Defendant also sought to dismiss appointed counsel after asserting that appointed counsel was refusing to make certain arguments to the jury suggested by defendant. This request was also appropriately denied. It is well settled that where a defendant chooses to be represented by counsel, counsel is not required to abandon his professional judgment and to act in whatever manner is dictated by the client. *See Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988). As the Fourth Circuit explained recently in *United States v. Chapman*, 593 F.3d 365, 370 (4th Cir. 2010):

> [N]otwithstanding the fact that a principal generally has the authority to dictate the manner in which his agent will carry out his duties, the law places certain tactical decisions solely in the hands of the criminal defense attorney. This reallocation of rights and duties is necessary to give effect to the constitutional rights granted to criminal defendants and to insure the effective operation of our adversarial system, where defense attorneys must protect the interests of their clients while also serving as officers of the court.

*Id.* This is so, the Supreme Court has noted, because although there are fundamental rights that a client alone must decide whether to exercise or to waive, "[t]he adversary process could not function effectively if every tactical decision required client approval." *Taylor*, 484 U.S. at 417-18; *see also Chapman*, 593 F.3d at 369 (noting that a client must personally decide only whether to plead guilty, to waive a jury, to taking the stand, and to appeal a conviction or sentence). Additionally, as an officer of the court, an attorney has important ethical obligations that preclude him, *inter alia*, from knowingly offering perjured testimony or making false statements to a court.[7] A client cannot simply demand that his attorney violate these important ethical

---

[7] *See, e.g.*, Rule 3.3, Va. R. Prof. Conduct (prohibiting a lawyer from "mak[ing] a false statement of fact or law to a tribunal" or "offer[ing] evidence that the lawyer knows to be false," and recognizing a lawyer's right to "refuse to offer evidence that the lawyer reasonably believes is false"); Rule 3.1, Va. R. Prof. Conduct (prohibiting an attorney from advancing an argument that is frivolous or that lacks a good faith basis for the law's modification).

canons. In essence, these principles make clear that an attorney is first and foremost accountable to the court, and the attorney must not surrender his professional judgment, candor, and integrity at the courthouse steps. Put more colloquially, defense counsel is not defendant's ventriloquist dummy. Thus, because defense counsel is entitled to use his professional judgment to determine the appropriate arguments to advance or statements to be made in his closing, defendant cannot be permitted to proceed *pro se* based only on his counsel's refusal to follow his client's precise instructions.

Additionally, while a defendant has a right to choose his own counsel, that right, like the right to proceed *pro se*, is not absolute. *United States v. Jennette*, 387 Fed. Appx. 303, 306 (4th Cir. 2010). In particular, a defendant's right to choose his own counsel is limited so as not to "deprive the courts of the exercise of their inherent power to control the administration of justice." *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988). In *Gallop*, the Fourth Circuit recognized that a district court retains the discretion whether to grant a defendant's request for new counsel, and review of a district court's decision in that regard must focus on three factors: (i) timeliness of the motion; (ii) adequacy of the district court's inquiry into the defendant's complaint; and (ii) whether the attorney-client conflict was so great that it had resulted in a "total lack of communication preventing an adequate defense." *Gallop*, 838 F.2d at 108.

For the foregoing reasons, defendant's requests (i) to proceed *pro se* in closing argument and (ii) to dismiss his counsel after the government's closing argument were appropriately denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 9, 2011

/s/
T. S. Ellis, III
United States District Judge